UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

FILED

AUG 19 2013

FREDERICK J. KAPALA
U.S. DISTRICT COURT JUDGE

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | No. 12 C 50051-4 |
| vs. | ) | Judge Frederick J. Kapala |
| | ) | |
| JAMES C. BLANCHARD | ) | |

## PLEA AGREEMENT

1. This Plea Agreement between the United States Attorney for the Northern District of Illinois, GARY S. SHAPIRO, and defendant JAMES C. BLANCHARD, and his attorney, MATTHEW T. JURA, is made pursuant to Rule 11 of the Federal Rules of Criminal Procedure Procedure and is governed in part by Rule 11(c)(1)(A), as more fully set forth below. The parties to this Agreement have agreed upon the following:

## Charges in This Case

2. The indictment in this case charges defendant with one count of wire fraud, in violation of Title 18, United States Code, Section 1343, and five counts of causing false documents to be made and used in a matter within the jurisdiction of a federal agency, in violation of Title 18, United States Code, Section 1001(a)(3).

3. Defendant has read the charges against him contained in the indictment, and those charges have been fully explained to him by his attorney.

4. Defendant fully understands the nature and elements of the crimes with which he has been charged.

**Charge to Which Defendant Is Pleading Guilty**

5. By this Plea Agreement, defendant agrees to enter a voluntary plea of guilty to the following count of the indictment: Count Eight, which charges defendant with wire fraud, in violation of Title 18, United States Code, Section 1343.

**Factual Basis**

6. Defendant will plead guilty because he is in fact guilty of the charge contained in Count Eight of the indictment. In pleading guilty, defendant admits the following facts and that those facts establish his guilt beyond a reasonable doubt and constitute relevant conduct pursuant to Guideline § 1B1.3:

(a) In general, defendant admits that from as early as May 2007, and continuing to at least December 9, 2010, he knowingly engaged in a scheme to defraud the United States and U.S. military veterans enrolled in a program known as NASA Education, and to obtain money, funds, credit, and property by means of materially false and fraudulent pretenses, representations, and promises. Defendant further admits that, on June 10, 2008, for purposes of executing this scheme to defraud, he knowingly caused to be transmitted by means of a wire communication in interstate commerce from Liberating Solutions Corporation ("Liberating Solutions") in Crystal Lake, Illinois, to a computer located in New Mexico, certain signals, namely an e-mail which stated that Liberating Solutions had no payroll records for "Individual A," because Individual A was an owner of Liberating Solutions.

(b) Specifically, defendant admits that from during the time periods covered by the indictment, he was employed by businesses owned by his brother, co-defendant John Blanchard. One of the businesses owned by co-defendant John Blanchard which defendant worked for was Liberating Solutions. Liberating Solutions bid on, and performed work under, government contracts. Defendant worked as a Project Manager for Liberating Solutions. Defendant also performed work for another company owned by co-defendant John Blanchard known as NASA Education Corporation ("NASA Education"). A website for NASA Education stated that it was a non-profit organization designed to provide training for applicants interested in pursuing careers in information technology. Through NASA Education, co-defendant John Blanchard operated a program he called Project Fresh Start. The stated purpose of Project Fresh Start was to help displaced, disabled, homeless, and other veterans transition into mainstream community life.

Some of the federal contracts that Liberating Solutions obtained were governed by the Service Contract Act and the Davis Bacon Act. The Service Contract Act requires that companies which contract with the federal government to furnish services through the use of service employees must pay those employees certain minimum monetary wages. The Davis-Bacon Act requires that companies that receive federally funded contracts for the construction, alteration, or repair (including painting and decorating) of public buildings must pay their laborers no less than the locally prevailing wages and fringe benefits for corresponding work on similar projects in the area. Federal regulations which implement the

Davis Bacon Act require that, during the performance of the contract, companies must submit certified weekly payroll records to the government's Contracting Officer.

At some point, defendant became aware that the Liberating Solutions contracts were governed by the Service Contract Act and the Davis Bacon Act. Defendant was also aware that much of the labor for these contracts was provided by veterans who were enrolled in a the NASA Education program. Defendant was further aware that many of the veterans who labored under the Liberating Solutions contracts were not paid for their work, and those who were paid did not receive wages in the amounts required by the Service Contract Act and the Davis Bacon Act.

In September of 2007, Liberating Solutions was awarded a contract with the U.S. Air Force to provide grounds maintenance at Kirtland Air Force Base in Albuquerque, New Mexico. This contract was governed by the Service Contract Act. Defendant was the Project Manager for the Kirtland Air Force Base contract. The actual grounds maintenance under this contract was performed by Individual A. Individual A was a U.S. military veteran who was enrolled in the NASA Education program. As defendant knew, Liberating Solutions did not pay Individual A any wages for the work he performed at Kirtland Air Force Base.

In approximately April of 2008, employees of the federal government discovered that Individual A was not receiving wages from Liberating Solutions for the work he was performing at Kirtland Air Force Base. The Department of Labor ("DOL") subsequently initiated an investigation of this situation.

Defendant and co-defendant Eric Behler attempted to conceal from the federal government Liberating Solutions' failure to comply with the Service Contract Act. Specifically, defendant and co-defendant Behler attempted to convince federal government employees that Individual A was a part-owner of Liberating Solutions. After the Department of Labor began its investigation, defendant met with Individual A and told him that he was a part-owner of Liberating Solutions. In addition, on June 10, 2008, co-defendant Behler sent an e-mail to the Contracting Specialist which stated that Liberating Solutions had no payroll records for Individual A, because Individual A was an owner of Liberating Solutions. As defendant well knew, Individual A never had any ownership interest in Liberating Solutions. The total amount of wages that Liberating Solutions should have paid to Individual A was $2,915.

Defendant further admits that he assisted co-defendant Amy Johnson in submitting false documents to the Department of Labor in connection with certain grants that NASA Education had received from the DOL.

From at least as early as March of 2007, and continuing to at least March of 2010, NASA Education and Project Fresh Start sponsored at least six Stand Down events for veterans. Stand Downs were events for homeless veterans that were held in a local community. The purpose of Stand Down events was to provide veterans with information regarding training, employment opportunities, and social services.

DOL provided up to $10,000 in grant funds to organizations that sponsored "Stand Down" events. Organizations that received DOL grants for Stand Downs were required to

provide to the DOL receipts or invoices for costs incurred in staging the events. Organizations that received DOL grants for Stand Downs were also required to return to the DOL any funds not expended in putting on the Stand Downs.

Co-defendant Johnson was responsible for preparing and submitting to DOL summaries of NASA Education's expenses and supporting receipts and invoices. For at least five of the Stand Down events, co-defendant Johnson created and submitted to DOL fictitious invoices from "Bull Dog Security." These invoices falsely indicated that Bull Dog Security had performed security services for the Stand Down events and purported to bill NASA Education for these security services.

Defendant assisted co-defendant Johnson in the preparation of the false Bull Dog Security invoices. Defendant permitted co-defendant Johnson to use his home address in McHenry, Illinois, as the address for Bull Dog Security shown on the invoices. Defendant was actually responsible for organizing the security needed for the Stand Downs. As defendant well knew, however, Bull Dog Security was a fictitious entity that did not provide security for the Stand Downs. Instead, the security for these events was provided by volunteers and veterans enrolled in the NASA Education program who were not compensated for their services.

Co-defendant Johnson also submitted to the DOL false invoices from the facility where the Stand Down events were held. Contrary to the representations made by co-defendant Johnson on the expense summaries she submitted to DOL, NASA Education did not pay anything to the facility where the Stand Downs were held.

The false Bull Dog Security invoices and the facility invoices that co-defendant Johnson submitted to DOL prevented NASA Education from being required to return any of the grant funds it had received to DOL. Defendant admits that this conduct caused a loss to DOL of $12,117.30.

## Maximum Statutory Penalties

7. Defendant understands that the charge to which he is pleading guilty carries the following statutory penalties:

a. A maximum sentence of 20 years' imprisonment. This offense also carries a maximum fine of $250,000, or twice the gross gain or gross loss resulting from that offense, whichever is greater. Defendant further understands that the judge also may impose a term of supervised release of not more than three years. The Court may also impose a term of 1 to 5 years of probation.

b. Defendant further understands that the Court must order restitution to the victims of the offense in an amount determined by the Court.

c. In accord with Title 18, United States Code, Section 3013, defendant will be assessed $100 on the charge to which he has pled guilty, in addition to any other penalty or restitution imposed.

## Sentencing Guidelines Calculations

8. Defendant understands that in imposing sentence the Court will be guided by the United States Sentencing Guidelines. Defendant understands that the Sentencing

Guidelines are advisory, not mandatory, but that the Court must consider the Guidelines in determining a reasonable sentence.

9. For purposes of calculating the Sentencing Guidelines, the parties agree on the following points:

a. **Applicable Guidelines**. The Sentencing Guidelines to be considered in this case are those in effect at the time of sentencing, or at the time the offense was committed, whichever results in a lesser sentencing range. The following statements regarding the calculation of the Sentencing Guidelines are based on the Guidelines Manual currently in effect, namely the November 2012 Guidelines Manual.

b. **Offense Level Calculations.**

i. The base offense level is 7, pursuant to Guideline § 2B1.1(a)(1).

ii. The offense level must be increased by 4 levels, pursuant to Guideline § 2B1.1(b)(1)(C), because the loss caused by defendant's offense was more than $10,000.

iii. Defendant has clearly demonstrated a recognition and affirmative acceptance of personal responsibility for his criminal conduct. If the government does not receive additional evidence in conflict with this provision, and if defendant continues to accept responsibility for his actions within the meaning of Guideline § 3E1.1(a), including by furnishing the United States Attorney's Office and the Probation Office with all requested financial information relevant to his ability to satisfy any fine or restitution that may be imposed in this case, a two-level reduction in the offense level is appropriate.

c. **Criminal History Category**. With regard to determining defendant's criminal history points and criminal history category, based on the facts now known to the government and stipulated below, defendant's criminal history points equal 0 and defendant's criminal history category is I:

i. On or about September 30, 1976 , defendant was convicted of robbery in Will County, Illinois, and sentenced to 1 to 3 years in prison. Pursuant to Guideline 4A1.2(e)(1), defendant receives 0 criminal history points for this conviction.

d. **Anticipated Advisory Sentencing Guidelines Range**. Therefore, based on the facts now known to the government, the anticipated offense level is 9, which, when combined with the anticipated criminal history category of I, results in an anticipated advisory Sentencing Guidelines range of 4 to 10 months' imprisonment, in addition to any supervised release, probation, fine, and restitution the Court may impose.

e. Defendant and his attorney and the government acknowledge that the above Guideline calculations are preliminary in nature, and are non-binding predictions upon which neither party is entitled to rely. Defendant understands that further review of the facts or applicable legal principles may lead the government to conclude that different or additional Guideline provisions apply in this case. Defendant understands that the Probation Office will conduct its own investigation and that the Court ultimately determines the facts and law relevant to sentencing, and that the Court's determinations govern the final Guideline calculation. Accordingly, the validity of this Agreement is not contingent upon the probation

officer's or the Court's concurrence with the above calculations, and defendant shall not have a right to withdraw his plea on the basis of the Court's rejection of these calculations.

f. Both parties expressly acknowledge that this Agreement is not governed by Fed. R. Crim. P. 11(c)(1)(B), and that errors in applying or interpreting any of the Sentencing Guidelines may be corrected by either party prior to sentencing. The parties may correct these errors either by stipulation or by a statement to the Probation Office or the Court, setting forth the disagreement regarding the applicable provisions of the Guidelines. The validity of this Agreement will not be affected by such corrections, and defendant shall not have a right to withdraw his plea, nor the government the right to vacate this Agreement, on the basis of such corrections.

**Agreements Relating to Sentencing**

10. At the time of sentencing, the Government will recommend that the Court impose a sentence of some imprisonment within the applicable Guidelines range.

11. Regarding restitution, defendant acknowledges that the total amount of restitution owed to the Department of Labor is $12,117, minus any credit for funds repaid prior to sentencing, and that pursuant to Title 18, United States Code, § 3663A, the Court must order defendant, together with any jointly liable co-defendants, to make full restitution in the amount outstanding at the time of sentencing.

12. Restitution shall be due immediately, and paid pursuant to a schedule to be set by the Court at sentencing. Defendant acknowledges that pursuant to Title 18, United States Code, Section 3664(k), he is required to notify the Court and the United States Attorney's

Office of any material change in economic circumstances that might affect his ability to pay restitution.

13. Defendant agrees to pay the special assessment of $100 at the time of sentencing with a cashier's check or money order payable to the Clerk of the U.S. District Court.

14. Defendant agrees that the United States may enforce collection of any fine or restitution imposed in this case pursuant to Title 18, United States Code, Sections 3572, 3613, and 3664(m), notwithstanding any payment schedule set by the Court.

15. After sentence has been imposed on the count to which defendant pleads guilty as agreed herein, the government will move to dismiss the remaining counts of the indictment as to defendant.

## Acknowledgments and Waivers Regarding Plea of Guilty

### Nature of Agreement

16. This Agreement is entirely voluntary and represents the entire agreement between the United States Attorney and defendant regarding defendant's criminal liability in case 12 C 50051-4.

17. This Agreement concerns criminal liability only. Except as expressly set forth in this Agreement, nothing herein shall constitute a limitation, waiver, or release by the United States or any of its agencies of any administrative or judicial civil claim, demand, or cause of action it may have against defendant or any other person or entity. The obligations of this Agreement are limited to the United States Attorney's Office for the Northern District

of Illinois and cannot bind any other federal, state, or local prosecuting, administrative, or regulatory authorities, except as expressly set forth in this Agreement.

18. Defendant understands that nothing in this Agreement shall limit the Internal Revenue Service in its collection of any taxes, interest or penalties from defendant.

**Waiver of Rights**

19. Defendant understands that by pleading guilty he surrenders certain rights, including the following:

a. **Trial rights**. Defendant has the right to persist in a plea of not guilty to the charges against him, and if he does, he would have the right to a public and speedy trial.

i. The trial could be either a jury trial or a trial by the judge sitting without a jury. However, in order that the trial be conducted by the judge sitting without a jury, defendant, the government, and the judge all must agree that the trial be conducted by the judge without a jury.

ii. If the trial is a jury trial, the jury would be composed of twelve citizens from the district, selected at random. Defendant and his attorney would participate in choosing the jury by requesting that the Court remove prospective jurors for cause where actual bias or other disqualification is shown, or by removing prospective jurors without cause by exercising peremptory challenges.

iii. If the trial is a jury trial, the jury would be instructed that defendant is presumed innocent, that the government has the burden of proving defendant

guilty beyond a reasonable doubt, and that the jury could not convict him unless, after hearing all the evidence, it was persuaded of his guilt beyond a reasonable doubt and that it was to consider each count of the indictment separately. The jury would have to agree unanimously as to each count before it could return a verdict of guilty or not guilty as to that count.

iv. If the trial is held by the judge without a jury, the judge would find the facts and determine, after hearing all the evidence, and considering each count separately, whether or not the judge was persuaded that the government had established defendant's guilt beyond a reasonable doubt.

v. At a trial, whether by a jury or a judge, the government would be required to present its witnesses and other evidence against defendant. Defendant would be able to confront those government witnesses and his attorney would be able to cross-examine them.

vi. At a trial, defendant could present witnesses and other evidence in his own behalf. If the witnesses for defendant would not appear voluntarily, he could require their attendance through the subpoena power of the Court. A defendant is not required to present any evidence.

vii. At a trial, defendant would have a privilege against self-incrimination so that he could decline to testify, and no inference of guilt could be drawn from his refusal to testify. If defendant desired to do so, he could testify in his own behalf.

b. **Waiver of appellate and collateral rights.** Defendant further understands he is waiving all appellate issues that might have been available if he had exercised his right to trial. Defendant is aware that Title 28, United States Code, Section 1291, and Title 18, United States Code, Section 3742, afford a defendant the right to appeal his conviction and the sentence imposed. Acknowledging this, defendant knowingly waives the right to appeal his conviction, any pre-trial rulings by the Court, and any part of the sentence (or the manner in which that sentence was determined), including any term of imprisonment and fine within the maximums provided by law, and including any order of restitution, in exchange for the concessions made by the United States in this Agreement. In addition, defendant also waives his right to challenge his conviction and sentence, and the manner in which the sentence was determined, and (in any case in which the term of imprisonment and fine are within the maximums provided by statute) his attorney's alleged failure or refusal to file a notice of appeal, in any collateral attack or future challenge, including but not limited to a motion brought under Title 28, United States Code, Section 2255. The waiver in this paragraph does not apply to a claim of involuntariness, or ineffective assistance of counsel, which relates directly to this waiver or to its negotiation, nor does it prohibit defendant from seeking a reduction of sentence based directly on a change in the law that is applicable to defendant and that, prior to the filing of defendant's request for relief, has been expressly made retroactive by an Act of Congress, the Supreme Court, or the United States Sentencing Commission.

c. Defendant understands that by pleading guilty he is waiving all the rights set forth in the prior paragraphs. Defendant's attorney has explained those rights to him, and the consequences of his waiver of those rights.

**Presentence Investigation Report/Post-Sentence Supervision**

20. Defendant understands that the United States Attorney's Office in its submission to the Probation Office as part of the Pre-Sentence Report and at sentencing shall fully apprise the District Court and the Probation Office of the nature, scope, and extent of defendant's conduct regarding the charges against him, and related matters. The government will make known all matters in aggravation and mitigation relevant to sentencing.

21. Defendant agrees to truthfully and completely execute a Financial Statement (with supporting documentation) prior to sentencing, to be provided to and shared among the Court, the Probation Office, and the United States Attorney's Office regarding all details of his financial circumstances, including his recent income tax returns as specified by the probation officer. Defendant understands that providing false or incomplete information, or refusing to provide this information, may be used as a basis for denial of a reduction for acceptance of responsibility pursuant to Guideline § 3E1.1 and enhancement of his sentence for obstruction of justice under Guideline § 3C1.1, and may be prosecuted as a violation of Title 18, United States Code, Section 1001 or as a contempt of the Court.

22. For the purpose of monitoring defendant's compliance with his obligations to pay a fine and restitution during any term of supervised release or probation to which defendant is sentenced, defendant further consents to the disclosure by the IRS to the

Probation Office and the United States Attorney's Office of defendant's individual income tax returns (together with extensions, correspondence, and other tax information) filed subsequent to defendant's sentencing, to and including the final year of any period of supervised release or probation to which defendant is sentenced. Defendant also agrees that a certified copy of this Agreement shall be sufficient evidence of defendant's request to the IRS to disclose the returns and return information, as provided for in Title 26, United States Code, Section 6103(b).

**Other Terms**

23. Defendant agrees to cooperate with the United States Attorney's Office in collecting any unpaid fine and restitution for which defendant is liable, including providing financial statements and supporting records as requested by the United States Attorney's Office.

24. Defendant will not object to a motion brought by the United States Attorney's Office for the entry of an order authorizing disclosure of documents, testimony and related investigative materials which may constitute grand jury material, preliminary to or in connection with any judicial proceeding, pursuant to Fed. R. Crim. P. 6(e)(3)(E)(i). In addition, defendant will not object to the government's solicitation of consent from third parties who provided records or other materials to the grand jury pursuant to grand jury subpoenas, to turn those materials over to the Civil Division of the United States Attorney's Office, or an appropriate federal or state agency (including but not limited to the Internal Revenue Service), for use in civil or administrative proceedings or investigations, rather than

returning them to the third parties for later summons or subpoena in connection with a civil or administrative proceeding involving, or investigation of, defendant. Nothing in this paragraph or the preceding paragraph precludes defendant from asserting any legal or factual defense to taxes, interest, and penalties that may be assessed by the IRS.

25. Defendant understands that 10 U.S.C. § 2408 provides for a mandatory term of debarment of at least five years for any individual convicted of fraud or any other felony arising out of a contract with the Department of Defense. The term of debarment may only be waived if the Secretary of Defense determines a waiver is in the interests of national security. The defendant understands that he may be subject to administrative action by other federal or state agencies, based upon the conviction resulting from this Plea Agreement and upon grounds other than 10 U.S.C. § 2408. This Plea Agreement in no way controls whatever action, if any, other agencies may take. The defendant nevertheless affirms that he wants to plead guilty regardless of the debarment or administrative action consequences of his plea.

**Conclusion**

26. Defendant understands that this Agreement will be filed with the Court, will become a matter of public record, and may be disclosed to any person.

27. Defendant understands that his compliance with each part of this Agreement extends throughout the period of his sentence, and failure to abide by any term of the Agreement is a violation of the Agreement. Defendant further understands that in the event he violates this Agreement, the government, at its option, may move to vacate the

Agreement, rendering it null and void, and thereafter prosecute defendant not subject to any of the limits set forth in this Agreement, or may move to resentence defendant or require defendant's specific performance of this Agreement. Defendant understands and agrees that in the event that the Court permits defendant to withdraw from this Agreement, or defendant breaches any of its terms and the government elects to void the Agreement and prosecute defendant, any prosecutions that are not time-barred by the applicable statute of limitations on the date of the signing of this Agreement may be commenced against defendant in accordance with this paragraph, notwithstanding the expiration of the statute of limitations between the signing of this Agreement and the commencement of such prosecutions.

28. Defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in this Agreement, to cause defendant to plead guilty.

29. Defendant acknowledges that he has read this Agreement and carefully reviewed each provision with his attorney. Defendant further acknowledges that he understands and voluntarily accepts each and every term and condition of this Agreement.

AGREED THIS DATE: August 19, 2013

GARY S. SHAPIRO
United States Attorney

SCOTT A. VERSEMAN
Assistant U.S. Attorney
327 South Church Street – Room 3300
Rockford, Illinois 61101
815-987-4444

JAMES C. BLANCHARD
Defendant

MATTHEW T. JURA
Attorney for Defendant
62 N. Ayer Street
Harvard, Illinois 60033
815-943-8007